IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DOMINIQUE GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:03-CV-0349 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION TO REVERSE THE
COMMISSIONER'S DECISION AND REMAND FOR FURTHER ACTION**

Plaintiff DOMINIQUE GARCIA, brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case REMANDED for further action at the administrative level.

I.
THE RECORD

Plaintiff applied for supplemental security income (SSI) benefits under Title XVI of the Social Security Act effective March 15, 2001. Plaintiff's application was related to an injury which occurred January 26, 1999, when plaintiff hurt his back while fixing flats and lifting tires.

(Transcript [hereinafter Tr.] 78-79). Plaintiff's back impairment is claimed to have caused him constant low back pain, malfunction in his right leg, bladder problems and constipation. (Tr. 34-36). It was determined at the administrative level that plaintiff had not engaged in substantial gainful activity since he filed his application for benefits. (Tr. 19). Plaintiff was born July 24, 1981 (Tr. 19, 30, 78), and the record shows he attended high school into the eleventh grade and had attempted or was attempting to obtain his GED. (Tr. 45-47, 53, 54). According to plaintiff's application and testimony he has worked as a laborer for his father's construction company, as a grill cook, at a car wash vacuuming cars, and doing counter help at a restaurant. (Tr. 33-34, 81). The ALJ, however, determined plaintiff had no past relevant work as that term is defined in 20 C.F.R. § 416.965. (Tr. 20, Finding #7).

Following administrative denials of benefits, plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 25, 2002. (Tr. 27-55). On July 23, 2002, ALJ William F. Nail, Jr. rendered an unfavorable decision, finding plaintiff not entitled to benefits at any time relevant to the decision. (Tr. 15-20). The ALJ determined plaintiff retained, "an exertional capacity for sedentary work." (Tr. 20, Finding #12). On September 10, 2003, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr.7-10), rendering the ALJ's decision the final decision of the defendant Commissioner. Plaintiff now seeks judicial review.

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v.*

*Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989).  To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)).  If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding.  *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).  Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence.  *Hames v. Heckler*, 707 F.2d at 164.  Stated differently, the level of review is not *de novo*.  The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue.  The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

III.
<u>ISSUES</u>

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis.  Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision.  To this extent,

plaintiff presents the following issues:

1. Whether defendant's finding as to plaintiff's residual functional capacity (RFC) is supported by substantial evidence; and

2. Whether defendant's use of the Medical-Vocational Guidelines was reversible error.

## IV.
## MERITS

### A.
### RFC Finding

Plaintiff argues defendant's finding as to plaintiff's residual functional capacity (RFC) *i.e.* that plaintiff could perform a full range of sedentary work including, "work activities involving lifting no more than 10 pounds at a time and occasionally walking and standing as necessary in order to fulfill job duties," (Tr. 20, Finding #6), is not supported by substantial evidence. First, plaintiff argues, the ALJ failed to perform the required step by step analysis in reaching the RFC finding by not following criteria set forth by Fifth Circuit precedent in *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001)(*citing Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). In particular, plaintiff avers the ALJ failed to consider how many hours in an 8-hour work day plaintiff could sit. Plaintiff cites the opinion of Dr. Dennis Plummer, who performed a consultive examination on July 17, 2001. (Tr. 146-148). Plaintiff asserts Dr. Plummer is the only examining physician to provide an opinion of plaintiff's functional capabilities (Plaintiff's Brief at 15), and refers to Dr. Plummer's notes wherein he stated plaintiff was capable of "sitting short, periods, standing short periods." (*Id*. citing Tr. 148).

The determination of a claimant's RFC is within the province of the ALJ. In this case, in reaching the determination of plaintiff's RFC, the ALJ referenced the medical records including a March 2001 MRI, Dr. Luiz G. Cesar's records, Dr. LaGrone's records, and Dr. Daneshfar's records (Tr. 16-17). The ALJ also mentioned the program physician's determinations that plaintiff was capable of medium work (Tr. 17), although he further stated he gave little weight to those opinions because of additional medical evidence submitted at the hearing. Although the ALJ referenced the medical evidence of record, it is the opinion of the undersigned that the medical evidence of record does not support the ALJ's determination regarding plaintiff's RFC.

<u>Medical Evidence</u>

The ALJ describes Dr. Cesar as plaintiff's treating neurological surgeon and recites that Dr. Cesar found plaintiff's problem was myofascial with perhaps a disc component. The ALJ opinion then states that beginning May 2001, conservative treatment with physical therapy was recommended, and references Exhibit 6F, which includes all of Dr. Cesar's records. The ALJ does not specify which particular records of Dr. Cesar support his findings.

Dr. Cesar's records do not support the ALJ's conclusion. While it is true, as the ALJ recites, that Dr. Cesar, in February 1999, approximately two weeks after plaintiff was injured, did find a myofascial problem with perhaps a disc component and felt that plaintiff should undergo conservative treatment with physical therapy, Dr. Cesar's opinion quickly changed. On May 26, 1999, Dr. Cesar opined that plaintiff had not received any help from all of the different forms of therapy and opined that plaintiff's pain was very characteristic of a mechanical back. Dr. Cesar was of the opinion the only operation that could help would be a cage procedure.

Subsequent to May 1999, Dr. Cesar's opinion was consistent and was always in favor of surgery. The medical evidence also shows that in addition to Dr. Cesar, plaintiff appears to have been seen by at least five other physicians, Dr. Piskun, Dr. Pallus, Dr. Plummer, Dr. LaGrone, and Dr. Daneshfar. Other than the disability determination physicians who found plaintiff capable of performing medium work without examining plaintiff, all of the other doctors, who did personally examine plaintiff, found him to be suffering from some disc related back injury. None of those physicians ever questioned plaintiff's complaints, found them to be exaggerated, or opined plaintiff was not suffering the degree of pain he described. Consequently, the medical evidence of record reflects an ongoing pattern of medical treatment from the onset of plaintiff's injury in January 1999 through at least the summer of 2002, following Dr. Daneshfar's IDET (Intradiscal Electrothermal Annuloplasty) procedure on March 25, 2002.

      Missing from the ALJ's analysis of the medical records is any mention of Dr. Dennis Plummer's July 17, 2001 examination. Dr. Plummer's records (Tr. 146-151) reflect, under the category entitled "Detailed Description of Orthopedic and Neurological Examination Findings," that plaintiff suffered a limitation of movement, that the cervical spine was described by plaintiff as being stiff, that lateral flexion was only 35 degrees each way, and that plaintiff was unable to extend about 60 degrees. Dr. Plummer further determined that plaintiff, when standing and trying to bend forward, was only able to flex forward about 20 degrees, and laterally about 20 degrees on each side. Dr. Plummer found plaintiff's lower extremities to be weaker than normal, and his strength to be weaker in the legs, but also noted the examination was limited by pain. Dr. Plummer's clinical impression was that plaintiff suffered from chronic back disorder with straight leg raising in the supine and sitting positions and midline tenderness at L4-5. He noted plaintiff had a marked limp favoring his right leg which plaintiff did not normally fully extend.

Lastly, Dr. Plummer found plaintiff's work-related functions to be sitting for short periods, standing for short periods, walking short distances, lifting light weights and handling objects with good, fine finger control (Tr. 147-148).

The administrative opinion omits any analysis or mention of Dr. Piskun or Dr. Pallus. The opinion leaves the impression that no physician, treating or otherwise, has recommended surgical intervention and, instead, that all have recommended conservative treatment which is expected to improve the plaintiff's condition. Indeed, at page 4 of the opinion, the opinion states the treating physicians agree the plaintiff's condition does not require surgery. (Tr. 18). That is simply not what the medical records show. Of the physicians who have examined plaintiff, only Dr. LaGrone recommends no surgical treatment, and his recommendation is primarily because of plaintiff's young age. Dr. Cesar, plaintiff's treating physician, has consistently recommended surgery after conservative treatment failed. The remaining physicians, Drs. Piskun, Pallus, and Daneshfar all recommended the IDET performed by Dr. Daneshfar.[1]

## Evaluation of Pain

Critical to any determination of plaintiff's RFC is the degree of pain being experienced. The administrative law judge was able to observe the plaintiff during his testimony and personal observation of a witness has long been recognized as an important factor in assessing the credibility of a witness. Further, as defendant argues, it is well settled that the assessment of the credibility of the witnesses is left to the administrative fact finder. In assessing the credibility of a witness, however, in addition to demeanor, one must also look at whether the witness' testimony is consistent or inconsistent, whether the witness is contradicted by other witnesses or

---

[1] Drs. Piskun and Pallus also recommended surgery as recommended by Dr. Cesar if the IDET procedure was unsuccessful.

by documentary evidence, and whether the witness' complaints are rebutted by his description of his daily activities. In rejecting plaintiff's complaints of pain, the ALJ cites that plaintiff's reported activities are not indicative of his complaints of totally disabling pain and that his treating physicians have not placed any functional restrictions on his activities which would preclude sedentary work activity. The ALJ does not specifically state which of plaintiff's reported activities are not indicative of his complaints of disabling pain. In the narrative of administrative opinion, after noting plaintiff's weight loss from 175 to 142 pounds, his poor appetite and poor sleeping pattern, the ALJ mentions plaintiff's ability to walk approximately 300 yards, to lift a gallon of milk, to visit with friends, go to the movies, go out to eat and read, and driving an automobile two times a week. Plaintiff's testimony regarding going to the movies was that plaintiff was unable to sit through a movie and would often get up and go to the back of the theater and stand in order to watch the film. There is nothing in plaintiff's testimony reflecting an ability to sit an extended period of time or to sit six hours in an eight-hour work day. Consequently, while the ALJ may be entitled to reject a claimant's subjective complaints, he may not do so based upon an inaccurate analysis of the claimant's testimony. The evidence in this case, both the medical evidence of record and the plaintiff's testimony, simply do not reflect an ability by plaintiff to perform the full range of sedentary work. There is no medical evidence, no physician's opinion, no consultive examination, or other expert finding to support a determination that plaintiff's diagnosed condition does not or would not cause plaintiff to suffer the pain and limitations he has described. While the Court recognizes that the evaluation of pain and how it limits an individual's daily activities is based, in large part, upon the individual's subjective complaints, and that those subjective complaints are subject to the ALJ's credibility finding, that credibility determination must be supported by substantial evidence. In this case,

there simply is no substantial evidence to support the determination that plaintiff Garcia could perform the full range of sedentary work.

For the reasons recited above, it is the opinion and finding of the undersigned United States Magistrate Judge that the residual functional capacity determination that plaintiff Garcia was capable of performing the full range of sedentary work be reversed and the case be remanded for further administrative action with respect to plaintiff's residual functional capacity.

B.
Use of the Medical-Vocational Guidelines

Plaintiff next argues the ALJ's use of the Medical-Vocational Guidelines, the Grids, was improper and was reversible error. Plaintiff argues less than substantial evidence supports the ALJ's implicit finding that plaintiff had no significant nonexertional limitations. Plaintiff cites his hearing testimony for the proposition that he suffered side effects from at least two of his medications, which resulted in slower reaction times, inability to remember, lack of concentration, and inability to keep his mind focused. (Plaintiff's Brief at 17 citing to Tr. 37, 46). Plaintiff argues that two of his prescribed drugs (Ultram and Zanaflex) are known to have "somnolence/sedation" as common side effects. (Plaintiff's Brief at 17). Consequently, plaintiff argues, the ALJ was required to consider these side effects as nonexertional limitations. Defendant agrees to that aspect of plaintiff's argument and cites *Loza v. Apfel*, 219 F.3d 378, 397 (5th Cir. 2000) for the proposition that if a claimant takes medication, the sides effects of that medication must be evaluated by the ALJ. (Defendant's Brief at 8).

In finding no side effects and/or in rejecting plaintiff's testimony regarding side effects, the ALJ appears to rely primarily, if not totally, on the alleged fact that plaintiff did not consult with his doctors or report any side effects from his medication to those doctors. (Tr. 18). While

the medical records do not appear to contain any entry reflecting plaintiff reported side effects to his doctors, that does not establish that plaintiff does not suffer side effects. The ALJ, when questioning plaintiff about medication side effects, made no inquiry of plaintiff of whether he had reported them to his doctors and, if not, why not. Further, it is possible he did report the side effects but no entry into the medical records was made. It is the opinion of the undersigned that, without further development of this issue, there is not sufficient evidence, *i.e.*, substantial evidence, in the record to reject plaintiff's testimony that there were side effects related to plaintiff's medications. Contrary to defendant's position, plaintiff did testify he suffered from the side effects of memory loss and ability to concentrate and stay focused. (Tr. 37, 46). He testified one of his medications was a "kind of morphine." He also stated he was taking Hydrocodene. (Tr. 37). The fact that plaintiff responded to the ALJ's line of questioning by referencing that his parents were of the opinion that he suffered side effects does not diminish the existence of such side effects, especially in light of petitioner's later testimony as to why he quit school. (*Id.*). Further, plaintiff's reference to his parents opinion serves to support plaintiff's own statements which might be characterized as subjective and/or self serving. Based upon plaintiff's testimony and the evidence of the side effects of plaintiff's medications, the use of grids was not appropriate in this case.[2] Plaintiff's pain medication is necessary and the side effects of that pain medication resulted, at least partially, in plaintiff experiencing classroom difficulties and his eventual withdrawal from school.[3]

In addition to the side effects of his medication, there is no reference or discussion in the ALJ opinion as to whether plaintiff's testimony regarding bladder problems and incontinence

---

[2] The Court notes it appears a Vocational Expert had been summoned to appear at plaintiff's administrative hearing but there is no indication as to why such VE was not present, or if he was present and was not called to testify. (Tr. 73-77).

[3] Plaintiff also testified he experienced classroom difficulties because he was unable to sit for an extended period.

was accepted or rejected. Incontinence would be another factor which would affect an individual's ability to engage in the full range of sedentary work, which requires sitting for up to six hours a day.

## V.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be REVERSED and the case be REMANDED for further administrative findings consistent with this Report and Recommendation.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 19th day of January 2007.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## **\* <u>NOTICE OF RIGHT TO OBJECT</u> \***

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988)..